[No. B057549. Second Dist., Div. Six. July 28, 1992.]

CALVIN SPELLMAN, Plaintiff and Respondent, v.
SECURITIES, ANNUITIES AND INSURANCE SERVICES, INC., et al.,
Defendants and Appellants.

**COUNSEL**

LeBoeuf, Lamb, Leiby & MacRae, Sanford Kingsley and Cheryl D. Orr for Defendants and Appellants.

Robert M. Sanger and Tomas Morales for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—An employee who sells securities is terminated by his employer. The employee claims he was wrongfully terminated because of racial discrimination. His employment contract provides that he abide by the rules of fair practice of the National Association of Securities Dealers, Inc. (NASD). These rules provide, among other things, that disputes between employee and employer be arbitrated. Here we hold that a claim for racial discrimination is subject to arbitration.

### FACTS

In March 1989, plaintiff Calvin Spellman signed a written employment agreement with Securities, Annuities and Insurance Services, Inc. (SAIS) and its corporate affiliate, GNA Securities, Inc.[1] Spellman was hired as an account executive to solicit and sell life insurance and securities. In that contract he agreed, inter alia, "to affiliate [himself] as a registered representative to sell securities for GNA Securities, Inc., an SAIS affiliate; and to meet all state law and NASD requirements pertaining to [his] license."

In particular, Spellman agreed to "strictly adhere to the Rules of Fair Practice of the National Association of Securities Dealers, Inc. [the Rules], as set forth in the NASD Manual, a copy of which GNA shall make available to you."

---

[1]We shall refer to appellants collectively as SAIS unless otherwise indicated.

The rules state, in pertinent part, that "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." (Art. III, par. 2151, § 1.) This rule cross-references paragraph 3744 of the NASD Code of Arbitration Procedure concerning failure to act under those arbitration provisions.

Paragraph 3744 of the NASD Code of Arbitration Procedure states, in pertinent part: "It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Article III, Section I of the Rules . . . for a . . . person associated with a member to fail to submit a dispute for arbitration under the Code of Arbitration Procedure as required by that Code . . . ."

Part II, section 8(a) of the NASD Code of Arbitration Procedure also requires arbitration of "[a]ny dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons . . . arising in connection with the business of such member(s) or in connection with the activities of such associated person(s) . . . ."

Part I of the NASD Code of Arbitration Procedure states that it has been "prescribed and adopted" "for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association . . . ."

In addition, Spellman executed a Uniform Application for Securities Industry Registration or Transfer Form U-4, known as the U-4 form. At the top of the signature page the U-4 form states in bold type, "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." Paragraph 5 reads: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register . . . ." Spellman registered with the NASD.

On August 31, 1990, Spellman filed this suit in superior court against SAIS, GNA and others alleging wrongful termination due to racial discrimination in violation of California Government Code section 12900 et seq., the California Fair Employment and Housing Act. His complaint also alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress and slander.

On November 9, 1990, SAIS filed a petition to compel arbitration and requested a stay of the action. At the hearing on the petition, the trial court

stated that it believed that arbitration could not be required in lieu of a statutory civil rights action, and it questioned whether the employment agreement validly required arbitration. On March 27, 1991, the court denied the petition.

On March 28, 1991, SAIS filed a notice of appeal from the order denying its petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).)

On May 13, 1991, the United States Supreme Court decided *Gilmer* v. *Interstate/Johnson Lane* (1991) 500 U.S. __ [114 L.Ed.2d 26, 111 S.Ct. 1647]. In *Gilmer*, the high court held that a statutory cause of action for wrongful termination due to age discrimination is subject to compulsory arbitration under the terms of a U-4 form.

### DISCUSSION

■ The interpretation of statutes and contracts is a matter of law subject to independent review by this court. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1079, 1084 [258 Cal.Rptr. 721].)

■ We must first decide whether the employment contract and the U-4 form contain enforceable compulsory arbitration provisions.

■ A contract may validly incorporate by reference the terms of another document if the reference is clear and unequivocal. (*Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641 [223 Cal.Rptr. 838].) The terms of the incorporated document must be known or easily available to the contracting parties. (*Ibid.*)

In *Chan*, plaintiff Chan was employed as a broker for a securities brokerage firm. Chan, at the request of her employer, signed a U-4 Uniform Application for Securities and Commodities Industry Representative. The U-4 application set forth only that Chan agree to abide " 'by the Statute(s), Constitution(s), Rules and By-Laws' " and any amendments of the three organizations to which Chan's application was submitted. Arbitration was not mentioned in the application, nor was Chan specifically directed to any documents which contained arbitration requirements. The Court of Appeal held there was no enforceable arbitration clause because the U-4 form did not clearly and unequivocally refer to any incorporated document. (*Chan* v. *Drexel Burnham Lambert, Inc., supra*, 178 Cal.App.3d at p. 643.)

■ Unlike Chan, Spellman signed a U-4 form which expressly requires arbitration. It states, in pertinent part: "I agree to arbitrate any dispute,

claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated . . . ." This is the statement, quoted, *ante*, which appears on the signature page of his U-4 form under the bold face heading warning applicants that they must read the paragraphs on that page "VERY CAREFULLY." Also, Spellman, unlike Chan, registered only with the NASD, not with three separate securities organizations.

The employment contract here also "clearly referred to and identified the incorporated document wherein the arbitration clause appeared." (*Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at p. 642; *Baker* v. *Aubry* (1989) 216 Cal.App.3d 1259, 1265 [265 Cal.Rptr. 381].) It states, in pertinent part: "You will strictly adhere to the Rules of Fair Practice of the National Association of Securities Dealers, Inc., as set forth in the NASD Manual, a copy of which GNA shall make available to you." Thus, both the U-4 form and the contract require arbitration.

### The Federal Arbitration Act

Whether Spellman must arbitrate his particular claim depends on the applicability of the Federal Arbitration Act (FAA). (9 U.S.C. § 1 et seq.)

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . ." (*Gilmer* v. *Interstate/Johnson Lane, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 36].) "Its primary substantive provision states that '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" (*Ibid.,* quoting 9 U.S.C. § 2.)

"Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 785, 103 S.Ct. 927]; *Gilmer* v. *Interstate/Johnson Lane, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 36].)

" 'In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 10

[79 L.Ed.2d 1, 11-12, 104 S.Ct. 852].)" (*Chan* v. *Drexel Burnham Lambert, Inc.*, *supra*, 178 Cal.App.3d at pp. 637-638.)

Spellman argues that the FAA does not apply to the instant employment contract because section 1 of the FAA states, in pertinent part, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) Spellman asserts that securities representatives engage in interstate commerce within the meaning of the FAA.

The *Gilmer* court did not consider the scope of section 1 of the FAA because only a U-4 application was before the high court, not an employment contract. (*Gilmer* v. *Interstate/Johnson Lane*, *supra*, 500 U.S. at p. __, fn. 2 [114 L.Ed.2d at pp. 36-37, fn. 2].)

To support his position that his employment contract is not arbitrable under the FAA, Spellman cites *American Postal Workers Union* v. *U.S. Postal Serv.* (11th Cir. 1987) 823 F.2d 466, 473, *Bacashihua* v. *U.S. Postal Service* (6th Cir. 1988) 859 F.2d 402, 404-405, and *Derwin* v. *General Dynamics Corp.* (1st Cir. 1983) 719 F.2d 484. Although lower federal court decisions are not binding on this court, they may be persuasive, especially as regards the interpretation of federal law. (*Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 780, p. 751.)

*American Postal* concerned the choice of a statute of limitations period in an action regarding a collective bargaining agreement. This case is not useful to Spellman. The court held that "collective bargaining agreements are 'contracts of employment' within the meaning of the [section 1] exclusion." (*American Postal Workers Union* v. *U.S. Postal Serv.*, *supra*, 823 F.2d at p. 473.)

The court also acknowledged that "[n]umerous courts have limited the exclusion to 'workers actually engaged in interstate commerce,' including bus drivers and truck drivers. [Citations.]" It stated in dicta, however, that "if any workers are 'actually engaged in interstate commerce,' the instant postal workers are." (*American Postal Workers Union* v. *U.S. Postal Serv.*, *supra*, 823 F.2d at p. 473; see also *Bacashihua* v. *U.S. Postal Service*, *supra*, 859 F.2d at pp. 404-405, which states that postal workers belong to a class of workers engaged in interstate commerce under the FAA.)

*Derwin* is not especially relevant either because it concerns the application of the FAA to disputes arising out of the Labor Management Relations Act.

(*Derwin* v. *General Dynamics Corp., supra,* 719 F.2d at pp. 486-487; 29 U.S.C. § 185(a).)

The *Matter of Management Recruiters Intern. and Nebel* (N.D.Ohio 1991) 765 F.Supp. 419, however, is pertinent here. The *Nebel* court decided whether disputes involving individual employment contracts of securities representatives are subject to compulsory arbitration under the FAA.

Like the instant case, *Nebel* involved a motion to compel arbitration under the Act because of alleged wrongful conduct of a securities account executive. The court considered whether an arbitration provision in Nebel's employment contract was subject to the exclusion contained in section 1 of the FAA.

The court noted that the First, Second, Third and Seventh Circuit Courts of Appeals have "limited the exception in § 1 to employees involved in the actual movement of goods in interstate commerce. . . ." The *Nebel* court held, therefore, that the FAA applies to non-union employment contracts in the securities industry. The narrow construction accorded section 1 of the FAA by the federal courts supports the strong national policy favoring arbitration as a means of settling private disputes. (*Matter of Management Recruiters Intern. and Nebel, supra,* 765 F.Supp. at pp. 421-422; see also *Dickstein* v. *duPont* (1st Cir. 1971) 443 F.2d 783, 785; *Stokes* v. *Merrill Lynch, Pierce, Fenner & Smith* (6th Cir. 1975) 523 F.2d 433, 436.)

*Arbitrability of State Statutory Claims for Racial Discrimination*

 The claim in *Gilmer, supra,* involved the federal Age Discrimination in Employment Act (ADEA). (29 U.S.C. § 621 et seq.) Spellman suggests that *Gilmer* is inapplicable to his claim of racial discrimination in employment under the California Fair Employment and Housing Act. (Gov. Code, § 12900 et seq.)

In the case of *Sacks* v. *Richardson Greenshield Securities, Inc.* (E.D.Cal. 1991) 781 F.Supp. 1475, the court applied *Gilmer* to a gender discrimination claim made under the California Unfair Employment Practices Act. An arbitration agreement was contained in the employee's U-4 application with the New York Stock Exchange (NYSE), and not in her employment agreement. The court held the matter arbitrable despite substantive and procedural distinctions between ADEA and the broad federal counterpart to this California statutory scheme, title VII of the Civil Rights Act of 1964. (*Sacks, supra,* at pp. 1482-1483; 42 U.S.C. § 2000e et seq.)

The *Sacks* court pointed out that because federal public policy strongly favors arbitration, parties to an arbitration agreement should be held to it,

unless Congress " '. . . has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " (*Sacks* v. *Richardson Greenshield Securities, Inc., supra,* 781 F.Supp. at p. 1478; *Gilmer* v. *Interstate/Johnson Lane, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 37].)

*Sacks* discussed two pre-*Gilmer* cases, *Swenson* v. *Management Recruiters Intern., Inc.* (8th Cir. 1988) 858 F.2d 1304, and *Alexander* v. *Gardner-Denver Company* (1974) 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011], in its analysis.

The *Swenson* court concluded "that Congress has articulated an intent . . . to preclude waiver of judicial remedies for violation of both federal title VII rights and parallel state statutory rights, thereby exempting state statutes from the provisions of the [FAA]." (*Swenson* v. *Management Recruiters Intern., Inc., supra,* 858 F.2d at p. 1309.)

The *Swenson* court reasoned that arbitration is inferior to judicial resolution of disputes, and that it was inadequate to deal with the public policy against discrimination which is of the " '. . . "highest priority." ' " (*Swenson* v. *Management Recruiters Intern., Inc., supra,* 858 F.2d at p. 1306, quoting *Alexander* v. *Gardner-Denver Company, supra,* 415 U.S. at p. 47 [39 L.Ed.2d at pp. 157-158]; see also 858 F.2d at pp. 1306-1307, 1309.)

Before *Gilmer,* lower courts found employment discrimination claims to be nonarbitrable, whether founded on federal or state statutes, because the Supreme Court in *Alexander, supra,* had determined that Congress intended to preclude waiver of the judicial forum in such cases. (*Sacks* v. *Richardson Greenshield Securities, Inc., supra,* 781 F.Supp. at p. 1481.)

The arbitration provisions involved in *Alexander,* however, existed to vindicate contractual rights under a collective bargaining agreement (CBA) which are not considered arbitrable under the FAA. A collective representative may not always represent the interests of an individual employee with a statutory claim. Under a CBA, labor arbitrators are not authorized to resolve individual statutory claims. *Alexander,* therefore, was not decided under the FAA. (*Sacks* v. *Richardson Greenshield Securities, Inc., supra,* 781 F.Supp. at p. 1479.)

By contrast, *Gilmer, Sacks* and the instant case concern individual claimants who executed securities registration forms subject to arbitration under the FAA. Under *Gilmer,* disputes alleging violation of statutory prohibitions against discrimination in employment may be subject to arbitration if the subject arbitration agreement is governed by the act. Unlike the *Swenson*

court, the high court in *Gilmer* stated that arbitration is not inferior to the judicial forum. (*Gilmer* v. *Interstate/Johnson Lane*, *supra*, 500 U.S. at p. __, fn. 5 [114 L.Ed.2d at pp. 42-43, fn. 5].)

The *Alexander* court stated that, "resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." (*Alexander* v. *Gardner-Denver Company*, *supra*, 415 U.S. at p. 57 [39 L.Ed.2d at p. 163].) More recently, *Gilmer* held that there was an insufficient showing that Congress intended to preclude arbitration of ADEA claims. As the *Sacks* court stated, the recent cases of *Gilmer* and *Alford* (*Dean Witter Reynolds, Inc.* v. *Alford* (1991) __ U.S. __ [114 L.Ed.2d 456, 111 S.Ct. 2050]) show "the High Court's increasing confidence in arbitration as a fair and competent alternative dispute resolution mechanism." (*Sacks* v. *Richardson Greenshield Securities, Inc.*, *supra*, 781 F.Supp. at p. 1483.)

Shortly after rendering the *Gilmer* decision, the Supreme Court made clear its view of arbitration of civil rights violations. The high court heard and remanded *Dean Witter Reynolds, Inc.* v. *Alford*, *supra*, __ U.S. __, a title VII gender discrimination claim, for reconsideration in light of its decision in *Gilmer*. On remand, the Fifth Circuit held that title VII claims are subject to arbitration under the FAA because that statutory scheme is substantially similar to ADEA. (*Alford* v. *Dean Witter Reynolds, Inc.* (5th Cir. 1991) 939 F.2d 229, 230.)

The Fifth Circuit stated that "[a]ny broad public policy arguments against such a conclusion [that such civil rights claims cannot be subject to compulsory arbitration] were necessarily rejected by *Gilmer*." (*Alford* v. *Dean Witter Reynolds, Inc.*, *supra*, 939 F.2d at p. 230.)

Reliance on a state statutory antidiscrimination scheme, as here, rather than on a federal title VII claim, does not alter the analysis of enforceability of arbitration agreements under the FAA. (See *Perry* v. *Thomas* (1987) 482 U.S. 483, 490 [96 L.Ed.2d 426, 435-436, 107 S.Ct. 2520]; *Sacks* v. *Richardson Greenshield Securities, Inc.*, *supra*, 781 F.Supp. at p. 1480.)

*Gilmer* and *Alford* stand for the proposition that important social policies and public rights embodied in statutes prohibiting discrimination in employment can be appropriately resolved by arbitration. The Supreme Court has determined that the arbitration forum provides sufficient procedural safeguards and mechanisms for discovery "to make the process suitable for discrimination claims" under such statutes. (*Sacks* v. *Richardson Greenshield Securities, Inc.*, *supra*, 781 F.Supp. at p. 1483.)

Spellman argues, however, that under title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-7, 2000h-4), Congress manifested its intent that claims of race discrimination in employment under state statutes not be subject to arbitration. (Citing *Swenson* v. *Management Recruiters Intern., Inc., supra,* 858 F.2d 1304; *Willis* v. *Dean Witter Reynolds, Inc.* (E.D.Ky. 1990) 753 F.Supp. 206, 209.) He argues that although *Gilmer* held that statutory age discrimination claims are subject to arbitration, claims of race discrimination are of greater concern under the Constitution.

In *Roe* v. *Kidder Peabody & Co.* (S.D.N.Y. 1990) 52 Fair Empl. Prac. Cas. (Bur. Nat. Affairs) 1865, the court directly confronted the issue of whether a claim for wrongful termination because of racial discrimination under title VII is arbitrable under the FAA.

The *Roe* court concluded that "the recent line of Supreme Court authority enforcing the Federal Arbitration Act and arbitration agreements covered by that statute, with the intimations for the future perceivable in the *Bird* remand [*Bird* v. *Shearson/Lehman/American Express, Inc.* (2d Cir. 1989) 871 F.2d 292], entitle Kidder to arbitration of Roe's discrimination claim." (*Roe* v. *Kidder Peabody & Co., supra,* 52 Fair Empl. Prac. Cas. at p. 1870.)

It is apparent that "suspicion of arbitration as a method of weakening the protections afforded in the substantive law . . . has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." (*Roe* v. *Kidder Peabody & Co., supra,* 52 Fair Empl. Prac. Cas. at p. 1868.)

### Whether NASD Rules Require Arbitration of Employment Discrimination Claims

Under NASD rules, "any dispute, claim, or controversy arising out of or in connection *with the business* of any member of the Association . . . between or among members . . . [or] between or among members and . . . others" is eligible for submission to arbitration. (NASD Code of Arbitration Procedure (1990) par. 3701, pt. I, § 1, p. 4, italics added; see *Nelsen* v. *Colleary* (Sup. 1991) 152 Misc.2d 81 [574 N.Y.S.2d 912, 913].) NASD rules require arbitration of any such dispute "at the instance of . . . a member against a person associated with a member . . . [and] a person associated with a member against [another] person associated with a member." (NASD Code of Arbitration Procedure, *supra,* par. 3708, pt. II, § 8(a); see *Francis* v. *Marshall* (D.Mass. 1987) 661 F.Supp. 773, 774.)

The issue posed is whether the instant dispute "aris[es] out of or in connection with the business of" SAIS within the meaning of paragraph

3701. If it does, which causes of action are subject to arbitration? Spellman argues that because his claim only concerns race discrimination leading to his wrongful termination, and not business transactions, per se, he is not subject to arbitration under these NASD rules.

This argument is clever but not persuasive. ■ "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Moses H. Cone Hospital* v. *Mercury Constr.*, *supra*, 460 U.S. at pp. 24-25 [74 L.Ed.2d at pp. 785-786].) This is because federal policy strongly favors arbitration. (*Southland Corp.* v. *Keating*, *supra*, 465 U.S. at p. 10 [79 L.Ed.2d at pp. 11-12].)

■ Congress has delegated broad powers to self-regulatory organizations within the securities industry, including NASD, to police the conduct of their members. (*Francis* v. *Marshall*, *supra*, 661 F.Supp. at p. 775; *Austin Mun. Securities* v. *Nat. Ass'n of Securities* (5th Cir. 1985) 757 F.2d 676, 679-681, 696-697 [that pendant claims are also subject to arbitration]; also see *Coenen* v. *R. W. Pressprich & Co.* (2d Cir. 1972) 453 F.2d 1209, 1211-1212 [interpreting NYSE rules re arbitration]; *Coudert* v. *Paine Webber Jackson & Curtis* (2d Cir. 1983) 705 F.2d 78, 81.)

This broad legislative delegation of power strengthens the presumption that disputes among members of such organizations and individuals associated therewith are arbitrable. (*Francis* v. *Marshall*, *supra*, 661 F.Supp. at p. 775.) ■ On its face, the instant NASD clause is very broad in scope. (*Ibid.*)

The NASD clause "is certainly broad enough to cover a dispute between an NASD member and an employee, not stemming from the purchase and sale of securities." (*Francis* v. *Marshall*, *supra*, 661 F.Supp. at p. 775 [common law counts arbitrable re: fraud in purchase/sale of a securities business]; see *Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey* (8th Cir. 1984) 726 F.2d 1286, 1288-1289, fn. omitted, in which, inter alia, the court construed a similar NYSE rule regarding nonmembers which states that "any controversy 'arising out of the business' of a member" required arbitration re: conversion of proprietary information.)

■ Significantly, courts have broadly construed language similar to that contained in NASD rules, under article VIII of NYSE rule 347, as to the arbitrability of claims of nonmembers " 'arising out of the business' of a member." (*Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey*, *supra*, 726 F.2d at p. 1288, fn. omitted; *Morgan* v. *Smith Barney, Harris Upham & Co.* (8th Cir. 1984) 729 F.2d 1163, 1165, 1167-1168.) Such claims, arising out of

employment or termination of employment and not directly entailing transactions, are arbitrable regardless of whether the employment contract itself is invoked. (*Morgan, supra,* at p. 1167.)

In *Nelsen* v. *Colleary, supra,* 574 N.Y.S.2d at page 913, plaintiff alleged that her supervisor at Chase Securities, Inc., engaged "in a campaign of harassment and humiliation denigrating her sex and religion, in violation of the New York State Human Rights Law . . . ." Chase is a member of NASD.

The arbitration agreement they executed (a U-4 form) is governed by the FAA. (*Nelsen* v. *Colleary, supra,* 574 N.Y.S.2d at p. 914.) The court reiterated the rule that any doubts concerning the scope of arbitration should be resolved in favor of it. (*Ibid.*)

Here, as in *Nelsen,* the wrongful conduct alleged directly involved significant aspects of Spellman's employment and business activities, including denigration of job performance, withdrawal of accounts, constant monitoring of job performance and setting of impossible job performance goals. (See *Nelsen* v. *Colleary, supra,* 574 N.Y.S.2d at p. 914.)

Citing *Gilmer* and *Roe, supra,* the *Nelsen* court held that such discrimination claims are "within the intent of the contractual arbitration clause." (*Nelsen* v. *Colleary, supra,* 574 N.Y.S.2d at p. 914.)

The superior court's order denying arbitration is vacated and the superior court is directed to enter a new order consistent with this opinion. The parties are to bear their own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied August 24, 1992, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 16, 1992. Mosk, J., was of the opinion that the petition should be granted.