Antonio ARAIZA, Plaintiff,

v.

NATIONAL STEEL AND SHIPBUILD-
ING CO. and Carl Hinrichson, De-
fendants.

No. Civil 97–0819–B(LSP).

United States District Court,
S.D. California.

July 23, 1997.

Dennis Grady, Jeff Geraci, Grady and Associates, San Diego, CA, for Plaintiff.

John Klinedinst, Garrett Gillespie, Klinedinst, Fliehman & McKillop, San Diego, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

BREWSTER, District Judge.

On June 10, 1997, Defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs are represented by Dennis Grady and Jeff Geraci of Grady and Associates. Defendants are represented by John Klinedinst and Garrett Gillespie of Klinedinst, Fliehman & McKillop. After careful consideration of the moving and opposing papers, the Court hereby DENIES Defendants'motion to dismiss.

### I. Background

Antonio Araiza worked for Defendant National Steel and Shipbuilding Company ("NASSCO") for approximately 22 years before being terminated on July 22, 1997. Araiza was placed on disability by his physician on June 12, 1995 due to medical problems including cirrhosis of the liver and gall stones. Plaintiff's physician released him to return to work in July 1996. Araiza was then examined by a physician of NASSCO's choosing, who cleared him to return to work on August 19, 1996. Araiza reported to NASSCO's human resources department and spoke with Defendant Carl Hinrichson. Plaintiff alleges that Hinrichson accused him of abusing alcohol and then terminated him.

Plaintiff filed a complaint in federal court on May 1, 1997, alleging violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the California Fair Employment and Housing Act ("FEHA"). Plaintiff indicated that timely charges of discrimination were filed with the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing, and that he received notifications of the right to sue.

On June 10, 1997, Defendants filed a motion to dismiss for lack of subject matter jurisdiction. As a member of Carpenters Local 1300, Plaintiff was subject to a collective bargaining agreement ("CBA") entered into by NASSCO and Plaintiff's union. Defendants argue that Plaintiff's ADEA, ADA, and FEHA claims are barred by the CBA's mandatory arbitration provision. The agreement states that all grievances, complaints, and disputes must be settled in accordance with the grievance procedure. In the event that an agreement is not reached, either party may refer the matter to arbitration. Defendants do not contend that Plaintiff waived his rights under the ADEA, ADA, or FEHA. Rather, Defendants move to compel Plaintiff to arbitrate his claims in accordance with the grievance and arbitration provisions of his union's CBA. Defendants additionally argue that Plaintiff's FEHA claim is preempted under Section 301 of the Labor Management Relations Act ("LMRA").

### II. Discussion

#### A. Standards for 12(b)(1) Motion to Dismiss

Dismissal is appropriate when the court lacks subject matter jurisdiction over a claim. Fed.R.Civ.P. 12(b)(1). A 12(b)(1) motion to dismiss may attack either the complaint on its face or the existence of subject matter jurisdiction in fact. *See Thornhill Publ'g v. General Tel. & Elecs.,* 594 F.2d 730, 733 (9th Cir.1979). The plaintiff, as the party seeking to invoke the court's jurisdiction, bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Amer.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

When considering a 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983). "[N]o presumptive truthfulness at-

taches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977).

Defendants properly raise this motion as a 12(b)(1) motion for lack of subject matter jurisdiction. Plaintiff asserts federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The Court lacks diversity jurisdiction; Araiza is a resident of California, and NASSCO's principal place of business is San Diego, California. *See* 28 U.S.C. § 1332(c)(1). If the CBA bars Plaintiff from pursuing judicial resolution of his statutory claims, Plaintiff's assertion of federal question jurisdiction would be void and the Court would have no basis for jurisdiction.

## B. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") is a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Section 2 of the FAA declares, that a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce" is valid and enforceable.[1] 9 U.S.C. § 2. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. § 3. In cases decided under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941. Section 1 expressly excludes from the FAA's purview employment contracts of seaman, railroad workers, and any other class of workers engaged in foreign or interstate commerce. 9 U.S.C. § 1. Those who fall within the Section 1 exclusion are not subject to the FAA.

The Supreme Court has yet to interpret the scope of Section 1. *See Gilmer v, Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991) (declining to address the scope of Section 1 because the arbitration clause at issue was not contained in an employment contract). Under a broad interpretation of Section 1, courts have held that all employment contracts are excluded from the FAA. *Id.* The Tenth Circuit concluded that Section 1 "encompasses collective bargaining agreements, and [ ].thus held the FAA 'is generally inapplicable to labor arbitration.'" *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1454 (10th Cir.1997) (quoting *United Food & Commercial Workers. Local Union No. 7R v. Safeway Stores. Inc.,* 889 F.2d 940, 944 (10th Cir.1989)). The Ninth Circuit has not decided how to interpret Section 1. *See Mago v. Shearson Lehman Hutton. Inc.,* 956 F.2d 932, 934 (9th Cir.1992) (noting that the FAA's application to employment contracts is unresolved). The "majority of the circuits ... have concluded that the exclusion should be narrowly construed to apply only to workers who ... are involved directly in interstate transportation of goods." *Golenia v. Bob Baker Toyota,* 915 F.Supp. 201, 203 (S.D.Cal.1996) (citing *Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2nd Cir.1972); *Tenney Eng'g. Inc. v. United Elec., Radio & Mach., Workers,* 207 F.2d 450, 452 (3rd Cir.1953); *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 596–602 (6th Cir.1995); *Miller Brewing Co. v. Brewery Workers Local No. 9,* 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985)).

■■■ The Court narrowly construes Section 1 of the FAA to exclude only employment contracts of workers directly involved in interstate transportation of goods. Plaintiff's employment as an abrasive blaster does not fall within the exclusion of Section 1. The FAA therefore applies in this case.

## C. Arbitration of Statutory Claims

Defendants argue that Plaintiff's ADEA, ADA, and FEHA claims are barred under

---

1. "Maritime transactions" and "commerce" are defined in 9 U.S.C. § 1.

the CBA provisions setting out grievance and arbitration procedures as the exclusive mechanism for dispute resolution. Defendants cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), arguing that statutory claims may be waived under arbitration agreements. Plaintiff argues that the holding in *Gilmer* does not apply to collective bargaining agreements. Plaintiff contends that the Supreme Court's decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), controls, and that his statutory claims were not waived under the CBA's mandatory arbitration provisions.

### 1. The Majority View Reconciling *Gardner–Denver* and *Gilmer*

In 1974, the Supreme Court held that union employees do not forfeit their statutory claims, even if they first pursue their grievance to final arbitration under a nondiscrimination clause of a collective bargaining agreement. *See Gardner–Denver*, 415 U.S. at 49, 94 S.Ct. at 1020. In *Gardner–Denver*, the plaintiff filed a grievance under his union's collective bargaining agreement claiming that he was wrongfully terminated on the basis of race. The arbitrator ruled that the plaintiff was discharged for cause. Alexander then filed a claim in federal court, alleging violations of Title VII of the Civil Rights Act of 1964. The district court granted the defendant's motion for summary judgment, finding that the plaintiff was bound by the arbitration decision and had no right to sue. The Court of Appeals affirmed, and the plaintiff appealed. The Supreme Court reversed, holding that an individual "does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id.* at 49, 94 S.Ct. at 1020. The Court stated that "the arbitrator has authority to resolve only questions of *contractual* rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Id,* at 53–54, 94 S.Ct. at 1022 (emphasis added). The Court also expressed concern about the adequacy of arbitration under collective bargaining agreements. The usual rules of evidence and common procedures such as discovery and cross-examination do not apply. *Id.* at 57, 94 S.Ct. at 1023–24. Furthermore, unions maintain exclusive control over the individual's grievance, and could subordinate the individual's claim to the union collective interests. *Id.* at 58, n. 19, 94 S.Ct. at 1024, n. 19.

Following *Gardner–Denver,* the Supreme Court held that claims under the Fair Labor Standards Act were not barred by the prior submission of contract-based claims to arbitration. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). The Court reiterated its concerns about the arbitration process, and concluded that "the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process." *Id.* at 745, 101 S.Ct. at 1447. *Gardner–Denver* and *Barrentine* both address whether the arbitration of contract-based claims bars subsequent judicial resolution of statutory claims. It is implicit in each decision, however, that statutory claims are not waived under collective bargaining agreement arbitration clauses. Lower courts cannot logically compel union employees to arbitrate statutory claims which the Supreme Court decided are independent of the arbitration process and outside of the arbitrator's authority.

The Supreme Court more recently held that statutory claims are waived under mandatory arbitration provisions of individual employment contracts. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the plaintiff was required by his employer to register as a securities representative with the New York Stock Exchange. The registration application included an agreement to arbitrate any dispute, claim, or controversy arising out of his employment or termination of employment. After the plaintiff was fired, he filed suit in federal district court alleging age discrimination in violation of the ADEA. The defendant moved to compel arbitration as required by the employment agreement. Relying on *Gardner–Denver,* the district court denied the defendant's

motion. The Court of Appeals reversed, and the plaintiff appealed. The Supreme Court affirmed the Circuit decision and held that the plaintiff could be subjected to compulsory arbitration of his ADEA claim. The Court stated that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 26, 111 S.Ct. at 1652 (internal quotations and citations omitted).

Though it represents a more favorable view of arbitration, *Gilmer* did not overrule *Gardner–Denver.* In fact, the Court found three distinctions between *Gardner–Denver* and the case before it. First *Gardner–Denver* involved the issue of "whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652. Second, the arbitration in *Gardner–Denver* occurred in the context of a collective bargaining agreement as opposed to an individual employment agreement. If forced to arbitrate, the claimant in *Gardner–Denver* would be represented by his union. "An important concern therefore was the tension between collective representation and individual statutory rights," a concern not applicable to *Gilmer. Id.* Third, *Gardner–Denver* was not decided under the FAA.

 In the aftermath of *Gardner–Denver* and *Gilmer,* it is settled that (1) mandatory arbitration agreements in *individual* employment contracts waive the employee's right to judicial resolution of statutory claims, so long as Congress has not evinced any intent to preclude waiver of judicial remedies,[2] and (2) union employees pursuing *contract-based* claims under a collective bargaining agreement must submit a grievance and follow the arbitration procedures provided in the CBA.

The Supreme Court, however, has not expressly decided whether a union employee subject to a collective bargaining agreement can be compelled to arbitrate *statutory* claims. In the numerous lower cases that have explored this very issue, the majority of courts have ruled that employees may not be compelled to arbitrate their statutory claims under collective agreements. *See e.g., Pryner v. Tractor Supply Co.,* 109 F.3d 354 (7th Cir.1997), *petition for cert. filed,* 65 U.S.L.W. 3783 (U.S. May 16, 1997) (No. 96–1830); *Varner v. National Super Markets,* 94 F.3d 1209 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); *Tran v. Tran,* 54 F.3d 115 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996); *Buckley v. Gallo Sales,* 949 F.Supp. 737 (N.D.Cal.1996); *DiPuccio v. United Parcel Service,* 890 F.Supp. 688 (N.D.Ohio 1995); *Block v. Art Iron, Inc.,* 866 F.Supp. 380 (N.D.Ind.1994). "[T]he majority view is that [*Gardner–Denver* ] and its progeny 'remain good law and that statutory employment claims are independent of a collective bargaining agreement's grievance and arbitration procedures.' " *Harrison,* 112 F.3d at 1453, (quoting Martin H. Malin, *Arbitrating Statutory Employment Claims in the Aftermath of Gilmer,* 40 St. Louis U.L.J. 77, 84 (1996)).

The Fourth Circuit's decision in *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.996), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996), is the minority view on this issue. In *Austin,* the court ruled that employees can be compelled to arbitrate statutory claims under collective bargaining agreements. *Id.* at 885. Linda Austin filed suit alleging violations of Title II and the ADA. The district court granted summary judgment because Austin failed to submit her claims to mandatory arbitration under a collective bargaining agreement. The agreement contained specific provisions that claims of disability and gender discrimination were subject to the grievance and arbitration procedures. The Fourth Circuit upheld the district court and found that whether the dispute arises under a "contract of employment, or a collective

---

**2.** The *Gilmer* holding has been extended to ADA claims as well. *See e.g., Golenia v. Bob Baker Toyota,* 915 F.Supp. 201 (S.D.Cal.1996). The District Court in *Golenia* specifically found that the "ADA itself betrays no indication of special hostility to arbitration; to the contrary, the ADA states that the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter." *Id.* at 205 (quoting 42 U.S.C. § 12212).

bargaining agreement, an agreement has yet been made to arbitrate the dispute." *Id.* at 885. The court stated that to "decide otherwise, we would have to hold that *Gilmer* has no effect at all and that [*Gardner–Denver*] is still the law that statutory claims cannot be the subject of required arbitration." *Id.* at 882.

### 2. Plaintiff's ADEA and ADA Claims are not Barred by the CBA

Defendants argue that Plaintiff's federal statutory claims are barred by the mandatory arbitration clause of the CBA. Defendants contend that the "*Gilmer* and *Austin* decisions represent the current thinking on the arbitration of statutory claims." (Defs. Reply p. 5). In opposition to Defendants' motion, Plaintiff cites *Pryner v. Tractor Supply Co.*, 109 F.3d at 354 (holding that collective bargaining agreements cannot compel the arbitration of statutory rights). Defendants dismiss *Gardner–Denver* and *Pryner* as "outdated reasoning" which was "specifically undermined in the more recent *Gilmer* decision." (Defs. Reply pp. 5–6).

Defendants' characterization of the current thinking on arbitration of statutory claims is misleading and mistaken. The vast majority of case law concurs with *Pryner* and holds that statutory claim are not waived under collective bargaining agreements. The *Austin* decision has been abdicated by all other courts deciding this issue. There is no Ninth Circuit authority on point, but the District Court for the Northern District of California opined that "the Ninth Circuit would not adopt the reasoning of the *Austin* majority, but would find that the jurisprudence of the Supreme Court compels the conclusion that an agreement to arbitrate in a collective bargaining agreement does not waive potential statutory remedies." *Buckley v. Gallo Sales,* 949 F.Supp. 737, 743 (N.D.Cal.1996). All courts but the Fourth Circuit Court of Appeals have held that *Gardner–Denver* continues to govern in the context of collective bargaining agreements. *See Bintner v. Burlington Northern,* 857 F.Supp. 1484, 1488 (D.Wyo.1994) ("There is nothing in *Gilmer* to suggest that the Court abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective-bargaining process."). Even the Supreme Court recently reiterated the consistency between *Gardner–Denver* and *Gilmer:* "In holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, *Gilmer* emphasized its basic consistency with our unanimous decision in [*Gardner–Denver*]. . . ." *Livadas v. Bradshaw,* 512 U.S. 107, 127 n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994). The Court also restated its concern that when arbitrating under collective bargaining agreements, "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." *Id.* (citations omitted).

Important distinctions between arbitration under individual employment agreements and arbitration under collective bargaining agreements warrant disregarding *Austin* and adopting the majority view. An employee arbitrating under an individual agreement, like the plaintiff in *Gilmer* can control the claim and be represented by counsel. The employee has rights of discovery and peremptory challenges to the arbitration panel. *See* Malin, *supra* at 86. In addition, the employee's counsel would be liable for malpractice if the claim was handled negligently.

In contrast, under a collective bargaining agreement, the union would maintain complete control over an employee's grievance. "It could drop the grievance, compromise it, or take it all the way to arbitration. . . ." *Id.* at 86–87. Unions are held to a duty of "fair representation" which requires only that union representatives not act arbitrarily, discriminatorily, or in bad faith. *Id.* at 87. The Supreme Court noted that "even if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration." *Barrentine,* 450 U.S. at 742, 101 S.Ct. at 1446. Moreover, the employee's individual rights may be compromised inasmuch as they conflict with the union's collective interests. In *Barrentine,* the plaintiff filed an FLSA claim to enforce his right to a minimum wage and overtime pay under the

act. The Supreme Court expressed concern that if the plaintiff were forced to arbitrate, the union's duty to maximize the overall compensation of its members might even permit them to "sacrifice" the plaintiff's statutory rights. *Id.*

While the *Austin* majority concluded that the "only difference" between the *Gardner–Denver* line of cases and *Gilmer* was that *Gardner–Denver* arose in the context of a collective bargaining agreement, they failed to realize that "the only difference makes all the difference." *Austin,* 78 F.3d at 886 (Hall, C.J., dissenting). Although employees subject to individual arbitration agreements are barred from filing statutory claims in court, they still have a viable opportunity for redress. They can pursue their claim through an arbitration process that affords them the right to counsel, rights of discovery, and challenges to the arbitration panel. Union employees compelled to arbitrate would not have the same access to redress. Their claims would be controlled by union representatives who are held to a deferential standard of conduct. Without violating its duty, the union could compromise or even drop the grievance, leaving the employee without a remedy for the statutory violations.

■ The Court disagrees with the argument that waiving the right to judicial resolution of statutory claims is no different than waiving the right to strike or the right to file claims for contract-based grievances. The constitutional rights protected by the ADEA and ADA may not be negotiated so as to leave victims of discrimination without a viable remedy. The fact that the FAA applies in this case does not, on its own, warrant barring Plaintiff's statutory claims. The FAA's liberal view of arbitration does not supersede union employees' rights to an adequate remedy for employment discrimination. The Court holds that statutory rights, unlike contract-based rights, are not waived under collective bargaining agreements, and that a union employee may not be compelled to arbitrate statutory employment claims. The CBA between Plaintiff's union and NASSCO implicates contractual rights only. The Plaintiff is under no obligation to arbitrate his ADEA and ADA claims, and the Defen-

dants' motion to dismiss is therefore denied with respect to these two claims.

### 3. Plaintiff's FEHA Claim is not Barred by the CBA

Defendants argue that California law bars Araiza's FEHA claim and mandates arbitration in accordance with the CBA. Defendants cite *Johnson v. Hydraulic Research & Mfg. Co.,* 70 Cal.App.3d 675, 139 Cal.Rptr. 136 (1977), but that case is not probative of the issue before this Court. The dispute in *Johnson* concerned the interpretation and application of specific clauses of the collective bargaining agreement. *Id.* at 680, 139 Cal. Rptr. 136. The Court agrees with the holding in *Johnson* that employees subject to mandatory arbitration provisions of collective agreements must arbitrate contract-based claims.

■ The actual question before this Court, to wit, whether state *statutory* claims are barred by collective agreement arbitration provisions, has not been expressly decided by California courts. In *Spellman v. Securities, Annuities & Ins. Services Inc.,* 8 Cal.App.4th 452, 461, 10 Cal.Rptr.2d 427 (1992), the California Supreme Court seemingly endorsed the view that statutory claims are not waived under collective bargaining agreements. The plaintiff, Calvin Spellman, worked as an account executive for the defendant. Spellman signed an employment contract which required that all disputes be arbitrated. The Court held that Spellman's claim for racial discrimination was arbitrable, but it distinguished *Gardner–Denver.* The Court found that a "collective representative may not always represent the interests of an individual employee with a statutory claim. Under a CBA, labor arbitrators are not authorized to resolve individual statutory claims." *Id.* at 461, 10 Cal.Rptr.2d 427. These statements, however, are only dictum.

Neither the Ninth Circuit nor the federal district courts of California provide the Court with much guidance. In fact, few courts have even addressed this issue. The more common attack on non-arbitrated state statutory claims is preemption under LMRA § 301 or preclusion under the workers' compensation act of California. Those courts

who have decided this issue are split. In *Williams v. Raley's Superstores, Inc.*, No. 94–3867, 1995 WL 20462 (N.D.Cal. Jan. 13, 1995), the court stated that "a claim arising out of the California Employment Act is also a separate claim that is independent of a CBA's arbitration process and entitled to full judicial resolution." *Id.* at *4. Conversely, the court in *Tomasetti v. Prudential Ins. Co. of Amer.*, No. 96–5169, 1996 WL 604752 (E.D.Cal. July 2, 1996) held that the plaintiff's "state statutory claims which arise out of his termination are subject to arbitration." *Id.* at *5.

The Court holds that Plaintiff's FEHA claim, like his federal statutory claims, is not barred by the mandatory arbitration provisions of his union's CBA. The rights protected by FEHA deserve the same protection that the Court has afforded the ADEA and the ADA, and the Court finds no reason to apply a different rule to state statutory claims than governs federal claims. Moreover, the commentary in *Spellman* indicates that if directly confronted with the issue, the California Supreme Court would likely find that *Gardner–Denver* continues to govern in the context of collective bargaining agreements. Plaintiff is not required to arbitrate his FEHA claim, and Defendants' motion to dismiss Plaintiff's FEHA claim is also denied.

## D. Plaintiff's FEHA Claim is not Preempted Under LMRA § 301(a)

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "A suit for breach of a collective-bargaining agreement is governed exclusively by federal law under section 301." *Perugini v. Safeway Stores Inc.*, 935 F.2d 1083, 1087 (9th Cir. 1991). Even suits based in tort are preempted if they require interpretation of a labor contract. *See id.*, 935 F.2d at 1088 (finding preempted intentional infliction of emotional distress claim insofar as it was based on interpreting employer's duty under labor contract).

If resolution of a state-law claim depends on interpretation of the collective agreement, "the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 406, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). In *Lingle,* the Court stated that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis." *Id.* at 408, 108 S.Ct. at 1882.

█ In other words, state claims are not preempted merely because they would address the same set of facts as would be addressed in the arbitration of contractual claims. Thus, the Ninth Circuit held that a plaintiff's FEHA disability discrimination claim was not preempted, even though the collective bargaining agreement contained a general nondiscrimination clause which prohibited discrimination on the basis of handicap. *Ackerman v. Western Elec. Co.*, 860 F.2d 1514 (9th Cir.1988). The court noted that FEHA confers upon employees rights independent of their collective agreements. It made no difference that the plaintiff had separate remedies for the same set of facts under the agreement's nondiscrimination clause. *Id.* at 1517.

In *Miller v. AT & T Network Sys.*, 850 F.2d 543 (9th Cir.1988), the Ninth Circuit established a three-part test for courts considering preemption arguments.

In deciding whether a state law [claim] is preempted under Section 301, [ ] a court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law [claim] will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is no.

*Miller,* 850 F.2d at 548. The Ninth Circuit decided that FEHA is supported by "clear statutory and regulatory standards [that] provide a means to determine 'reasonable accommodation.'" *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1527 (9th Cir.1995). The *Jimeno* court also held that through its public policy against discrimination, California has evinced an intent not to allow the prohibitions of FEHA to be altered by private contract. *Id.* at 1528. By answering "yes" to both the second and third prong of the *Miller* test, *Jimeno* appears to compel the conclusion that FEHA claims are never preempted by Section 301, even when the state law claim requires interpretation of the CBA. This Court, however, is unwilling to undercut Defendants' preemption claim by applying *Jimeno* and *Miller* in this manner. Doing so would violate the *Lingle* rule that state law claims dependent on interpretation of a labor contract are preempted.

Nevertheless, Defendants fail to even argue how Plaintiff's FEHA claim will require interpretation of the CBA. Article 17, Section 3(E) of the CBA governs the termination and reinstatement of disabled employees. It is not apparent whether Plaintiff's disability discrimination claim will require interpretation of this section. Defendants fail to even assert that it will. Defendants may have intended to argue that Plaintiff's FEHA claims are preempted by the nondiscrimination clause of the CBA, but that claim would fail. *Ackerman* clearly holds that FEHA claims are not preempted solely because they coincide with potential contract-based claims. Defendants' preemption claim is thus unsubstantiated and their motion to dismiss on this basis is denied.

### III. Conclusion

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED in its entirety.

IT IS SO ORDERED.