[No. A045093. First Dist., Div. Three. Dec. 22, 1989.]

NANCY JANE BAKER, Plaintiff and Appellant, v.
LLOYD W. AUBRY, JR., as Labor Commissioner, etc., Defendant
and Respondent;
FIDELITY BROKERAGE SERVICES, INC., Real Party in Interest
and Respondent.

COUNSEL

Henry F. Telfeian, Julie Collins Nelson, Kevin P. Block and McLaughlin & Irvin for Plaintiff and Appellant.

H. Thomas Cadell, Jr., for Defendant and Respondent.

Gary D. Roberts and Munger, Tolles & Olson for Real Party in Interest and Respondent.

## OPINION

**MERRILL, J.**—Appellant Nancy Jane Baker filed a complaint with respondent State of California Labor Commissioner (hereinafter Commissioner), seeking overtime pay from her former employer, respondent Fidelity Brokerage Services, Inc. (hereinafter Fidelity). At the hearing on Baker's complaint, Fidelity challenged the Commissioner's jurisdiction by asserting that the matter was subject to arbitration. After taking the jurisdictional objection under submission, the Commissioner dismissed Baker's complaint "[f]or want of statutory jurisdiction."

By her petition for writ of mandate, Baker sought to compel the Commissioner to assume jurisdiction over and adjudicate her complaint. An alternative writ of mandate issued. Following hearing, the superior court denied Baker's petition. She appeals.

I

█ Preliminarily we note that on review of the trial court's ruling on a writ of mandate, an appellate court is ordinarily limited to an inquiry respecting whether substantial evidence supports the judgment. However, this limitation is inapplicable to questions of law where the facts are undisputed. In such instances the appellate court is not bound by the trial court's determination but may make its own determination. (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].) The following undisputed facts were before the trial court.

Baker was employed by Fidelity from March 1986 to March 1987. In connection with her employment, Baker executed a "Uniform Application for Securities Industry Registration or Transfer," commonly known as the "U-4." The following provision is contained within the U-4, "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time." Item 10 of the U-4 indicated that Baker was to be registered with the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD). Rule 347 of the NYSE provides: "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules."

During her employment with Fidelity, Baker was, in fact, registered with the NYSE as a general securities representative.

The basis of Baker's claim was that she worked in excess of eight hours per day and did not receive overtime pay.

At the hearing on Baker's petition for writ of mandate, the superior court found the existence of a valid agreement to arbitrate between Baker and her employer. In addition, the court rejected Baker's argument that her overtime pay claim was based on statutory rights and therefore not subject to arbitration.

## II

Baker's first argument on appeal is that the U-4 does not encompass a valid agreement to arbitrate. She submits that the purported incorporation by reference of the NYSE rules was not sufficiently clear and unequivocal so as to form a binding arbitration agreement. Baker relies exclusively on *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632 [223 Cal.Rptr. 838] for her position.

The *Chan* court analyzed whether the U-4 document signed by the employee there constituted a valid arbitration agreement. Drexel argued that the following provision in the U-4 form adequately incorporated NYSE rule 347 by reference: " 'I agree to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application; . . .' " (*Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at p. 636.) The appellate court held no valid arbitration agreement was entered into by the parties as there was no clear and unequivocal reference to the incorporated document.

It is well settled that disputes between a member of a national stock exchange and its employee are governed by the Federal Arbitration Act, 9 United States Code section 1 et seq., where there is a binding arbitration agreement. (178 Cal.App.3d at p. 638, and cases there cited; see also *Thomas* v. *Perry* (1988) 200 Cal.App.3d 510, 515 [246 Cal.Rptr. 156].) In such instances, questions concerning the construction and scope of the arbitration clause are determined by federal law. (*Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at pp. 639-640.) However, the "*existence* of a valid agreement to arbitrate involves general contract principles, and state law governs disposition of that question. [Citations.]" (*Id.,* at p. 640.) Thus, the *Chan* court concluded California contract law principles must be applied in determining whether rule 347 was an enforceable provision of the contract.

■ Under California law, parties may validly incorporate by reference into their contract the terms of another document. The reference to the incorporated document must be "'. . . ". . . *clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.*"' [Citations.]" *Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at p. 641.)

The *Chan* court held that the U-4 form at issue there failed to incorporate NYSE rule 347 by reference. The court found the reference to the rule to be amorphous, failing to guide the reader to the incorporated document. (178 Cal.App.3d at p. 643.) The court reasoned: "The language in paragraph 2C of the U-4 application set forth only that Chan agreed to abide 'by the Statute(s), Constitution(s), Rules and Bylaws' and any amendments of the three organizations to which Chan's application was to be submitted. *Arbitration is nowhere mentioned in paragraph 2C.* One of the organizations to which Chan submitted the application was the NYSE, which promulgated Rule 347, the rule requiring arbitration. However, even assuming paragraph 2C referred specifically to the NYSE, the reader would thereafter be required to seek out Rule 347 thereof to locate the arbitration clause." (*Id.,* at p. 643, italics added.)

*Chan* distinguished the opinion in *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349 [175 Cal.Rptr. 226], which found arbitration provisions in the bylaws of a real estate board had been incorporated by reference into the parties' membership agreement. In *King,* the contract provided that the member agreed to abide by the constitution, bylaws, rules and regulations of the local real estate board and those of the state association. The bylaws of the local board required members to arbitrate disputes as set forth in the state associations' arbitration manual. The court found that the parties agreed to abide by the bylaws, and that the bylaw provision providing for arbitration properly incorporated by reference the separate arbitration manual. (*King* v. *Larsen Realty, Inc., supra,* 121 Cal.App.3d at pp. 353-357.) The distinguishing factor in *King,* found lacking in *Chan,* was the fact that the incorporated document was readily available to the appellants. (*Id.,* at p. 357; *Chan* v. *Drexel Burnham Lambert, Inc., supra,* at p. 641.)

■ The U-4 form at issue in the instant case is markedly different from the form at issue in *Chan.* The most significant distinction is that the U-4 form signed by Baker clearly indicated her agreement to *arbitrate.* The basic arbitration provision was contained in the U-4 itself and not in a secondary document. In *Chan* the U-4 form contained no language notifying the applicant of an arbitration provision. The applicant there was forced to search the body of rules to find the arbitration provision.

Additionally, the U-4 form here described generally the nature of the disputes to be arbitrated. Reference to rule 347 was required only for the scope of the arbitration clause. The form in *Chan* contained no such provision.

A valid arbitration agreement exists in the instant case. Baker agreed to arbitrate disputes as required by the bylaws, rules and constitutions of the organizations with which she registered in item 10 of the U-4. Baker herself indicated her registration with the NYSE in item 10 of the form. The rules of the NYSE were readily available to her as Baker had been registered with that organization for most of the four-year period prior to her execution of the U-4 here. The U-4 form signed by Baker reveals a binding arbitration agreement.

### III

Baker next asserts that even if a valid arbitration agreement exists, such agreement would not govern her claim to overtime pay. She submits that her right to overtime pay is statutory in nature, as opposed to contractual, and therefore may not be waived by any agreement to arbitrate. We find no merit in this contention.

Arbitration agreements which are a part of contracts evidencing interstate commerce are governed by section 2 of the Federal Arbitration Act.[1] " 'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' " (*Perry* v. *Thomas* (1986) 482 U.S. 483, 489 [96 L.Ed.2d 426, 435, 107 S.Ct. 2520], quoting *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 785, 103 S.Ct. 927].) By enacting section 2, " '. . . Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " (*Perry* v. *Thomas, supra*, 482 U.S. at p. 489 [96 L.Ed.2d at p.435], quoting *Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 10 [79 L.Ed.2d 1, 12, 104 S.Ct. 852].) The act reflects "Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." (*Perry* v. *Thomas, supra*,

---

[1] Section 2 of 9 United States Code provides in pertinent part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

482 U.S. at p. 490 [96 L.Ed.2d at p. 436].) The duty to enforce arbitration agreements under the Federal Arbitration Act is not diminished when a party to the arbitration agreement raises a claim based on statutory rights. (See *Shearson/American Express Inc.* v. *McMahon* (1987) 482 U.S. 220, 226-227 [96 L.Ed.2d 185, 193-194, 107 S.Ct. 2332] [concerning arbitrability of claims under Securities Exchange Act of 1934 and the Racketeer Influenced and Corrupt Organizations Act (RICO)].)

*Perry* concerned the arbitrability of a dispute over commissions from the sale of securities. As in the instant case, the former employee of a securities broker had executed a U-4 form in connection with his employment. The arbitration provision of the U-4 in *Perry* contained exactly the same language as the arbitration provision here. The former employee challenged the arbitrability of the dispute on the ground that section 229 of the Labor Code authorized the maintenance of his action, notwithstanding an agreement to arbitrate. (*Perry* v. *Thomas, supra*, 482 U.S. at pp. 484-486 [96 L.Ed.2d at pp. 432-433].)

The United States Supreme Court held that, under the Supremacy Clause (U.S. Const., art. VI, cl. 2), section 2 of the Federal Arbitration Act preempts a California statute providing for the maintenance of wage collection actions "without regard to the existence of any private agreement to arbitrate." (See Lab. Code, § 229.) The high court reasoned that the federal and state statutes were in direct conflict; accordingly, the state statute must give way. (*Perry* v. *Thomas, supra*, 482 U.S. at pp. 490-491 [96 L.Ed.2d at pp. 435-436].)

■ Baker's claim for overtime pay, even if based on a statutory right, is subject to arbitration. The broad language of the arbitration agreement here and the strong federal policy favoring arbitration of such agreements mandate the arbitrability of her claim. The U-4 arbitration provision set forth the parties' agreement to arbitrate any dispute or claim between Baker and Fidelity, as set forth in the rules of the organization with which she registered. The NYSE rule 347 requires arbitration of any employment-related controversy between a registered representative and a member of the exchange. Like the U-4 arbitration provision in *Perry*, the arbitration agreement here is governed by the Federal Arbitration Act and the policies behind it.

Baker states that her right to overtime pay is not based on any contractual right but has been conferred upon her by the Legislature. (See Lab. Code, § 510; *Aubry* v. *Goldhor* (1988) 201 Cal.App.3d 399, 404 [247 Cal.Rptr. 205].) Therefore, she argues, her overtime pay claim is independent of any employment-related claim and may not be waived by an

agreement to arbitrate. We disagree. Construction of the valid arbitration agreement presented here is governed by section 2 of the Federal Arbitration Act which favors strongly the enforcement of such agreements. The Federal Arbitration Act preempts our state law in this area.

Baker's reliance on *Barrentine* v. *Arkansas-Best Freight System* (1981) 450 U.S. 728 [67 L.Ed.2d 641, 101 S.Ct. 1437], for the proposition that wage claims based on a statutory right are not subject to arbitration, is misplaced. The *Barrentine* court held that rights which devolve upon employees as individual workers, and not as members of a union, are independent of the collective bargaining process and are not waivable by an agreement to arbitrate. The statutorily based rights at issue in *Barrentine* arose from the Fair Labor Standards Act (FLSA) (29 U.S.C. § 201). "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." (*Barrentine* v. *Arkansas-Best Freight System, supra,* 450 U.S. at p. 737 [67 L.Ed.2d at p. 651].) The court noted the tension between the national labor policy favoring collective bargaining, as reflected in the National Labor Relations Act of 1935 (the Taft-Hartley Act) (29 U.S.C. § 151 et seq.) and the national labor policy guaranteeing specific substantive rights to individual employees, the FLSA. While strong national labor policy supports collectively bargained dispute resolution procedures for disputes arising out of the collective bargaining process, FLSA rights have consistently been held to be nonwaivable because of the importance of the rights guaranteed. (*Id.,* at p. 740 [67 L.Ed.2d at pp. 653-654].)

The *Barrentine* court reasoned that a FLSA claim to minimum wage or overtime could be lost if submission to arbitration precluded an independent FLSA suit. First, the court considered the possibility that a union may reasonably and in good faith decide not to pursue vigorously a member's FLSA claim in the arbitration process. Second, even if the union pursued strongly the wage claim, the employee's statutory rights may still suffer at the hands of an arbitrator unfamiliar with the complex nature of a FLSA claim. (450 U.S. at pp. 742-743 [67 L.Ed.2d at p. 655].) Additionally, the *Barrentine* court emphasized that an arbitrator may be powerless to grant an aggrieved employee the full range of relief which is authorized by the FLSA inasmuch as the arbitrator is limited by the terms of the collective bargaining agreement.

*Barrentine* is readily distinguishable from the instant case. In the first instance, *Barrentine* did not involve the preemption of a state statute by a

conflicting federal statute. The conflict in *Barrentine* concerned the competing interests under two federal statutes.

Moreover, the court's rationale for determining the nonarbitrability of FLSA claims is not present in the case here. As collective bargaining does not come into play in the instant case, there is no concern about a union's less than vigorous pursuit of Baker's claim in the arbitration process. She would have complete control over the presentation and advocacy of her overtime claim in arbitration. Second, any potential complexity in an overtime pay claim, standing alone, does not suffice to counter the strong policies behind the Federal Arbitration Act favoring arbitration of this dispute. (See *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 633 [87 L.Ed.2d 444, 459, 105 S.Ct. 3346].) Finally, unlike the FLSA claim at issue in *Barrentine,* under the broad language of rule 347, as read into the U-4 form here, an arbitrator is empowered to grant Baker the relief requested, if warranted.

Resolution of Baker's overtime pay claim by arbitration does not deprive her of her substantive rights. It only changes the forum in which they will be resolved. (See *Mitsubishi Motors* v. *Soler Chrysler-Plymouth, supra,* 473 U.S. at p. 628 [87 L.Ed.2d at p. 456].)

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 1990.