94 Cal.Rptr.2d 623 (2000)
79 Cal.App.4th 1207
FIRSTAMERICA AUTOMOTIVE, INC., Plaintiff and Appellant,
v.
Edwin S. SWEENEY, Defendant and Respondent;
Arthur S. Lujan, as Labor Commissioner, etc., Intervener and Respondent.
No. H019813.
Court of Appeal, Sixth District.
March 16, 2000.
Review Granted June 14, 2000.
*624 Fisher & Phillips, Ned A. Fine, John P. Boggs, David J. Reese, Redwood City, for Plaintiff and Appellant.
No appearance by Respondent.
Miles E. Locker, Chief Counsel, Anne Rosenzweig, Staff Counsel, for Intervenor and Respondent.
BAMATTRE-MANOUKIAN, Acting P.J.
In this appeal we decide whether an employee's claim for unpaid wages should be heard by an arbitrator or by California's Labor Commissioner. The employer and employee agreed to submit all disputes arising from their employment contract to binding arbitration under the Federal Arbitration Act ("FAA," 9 U.S.C., § 1 et seq.). However, California Labor Code section 229 specifically exempts from arbitration claims for unpaid wages. The issue is therefore whether the FAA preempts the state statute. This in turn depends upon whether the parties' employment contract in this case falls within an exclusionary provision contained in the FAA which provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C., § 1, "section 1.")
Most courts that have interpreted this exclusionary provision in the FAA have construed the stated exceptions narrowly to refer to workers who, like seamen and railroad employees, are actually engaged in transporting goods or services across state lines.[1] The Ninth Circuit Court of Appeals, however, has recently construed the provision to exclude all employment contracts from coverage under the FAA, expressly holding that "the FAA does not apply to labor or employment contracts." (Craft v. Campbell Soup Co. (Craft) (9th Cir.1999) 177 F.3d 1083, 1094.)
*625 In this case Edwin Sweeney (Employee), employed as a car salesman for FirstAmerica Automotive, Inc., doing business as Capitol Nissan (Employer), filed a claim for unpaid wages with California's Labor Commissioner. In response, Employer filed a petition to compel Employee to arbitrate all his claims against Employer pursuant to the agreement in their employment contract to arbitrate any disputes arising from that contract under the FAA. The Labor Commissioner intervened in this action and opposed Employer's petition under authority of the Ninth Circuit's holding in Craft that employment contracts are excluded from the scope of the FAA. Therefore, there was no federal preemption and Employee's claim for unpaid wages must be adjudicated by the Labor Commissioner under Labor Code section 229. The trial court agreed with this reasoning, followed Craft, and denied Employer's petition, finding "there is no Federal preemption of Labor Code § 229."
We have carefully reviewed the provisions of the FAA, California Labor Code section 229, and the relevant case law. We believe the question is close, but, for the reasons stated below, we will follow the majority view that gives a narrow construction to the exclusionary provision of the FAA, thus furthering strong policy favoring arbitration. We conclude that the employment contract in this case did not fall within the exclusionary provision of section 1 of the FAA; thus the FAA preempts California Labor Code section 229. We therefore reverse the trial court's order.

CONTENTIONS AND STANDARD OF REVIEW
The parties' contentions center on the interpretation of the FAA and California Labor Code section 229. Employer contends that the exclusionary provision contained in section 1 of the FAA does not apply to the employment contract in this case. Thus the FAA applies and preempts the state statute. The Labor Commissioner, on the other hand, urges a broad interpretation of section 1 of the FAA to exclude employment contracts such as the one before us from the FAA.
These contentions present pure questions of law for our independent resolution. This court has said before: "`Where the facts are not in conflict and the issue involves the proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citations.]' [Citation.]" (People ex rel. Deputy Sheriffs' Assn. v. County of Santa Clara (1996) 49 Cal.App.4th 1471, 1477, 57 Cal.Rptr.2d 322.) "The interpretation of statutes and contracts is a matter of law subject to independent review by this court." (Spellman v. Securities, Annuities & Ins. Services, Inc. (1992) 8 Cal.App.4th 452, 457,10 Cal.Rptr.2d 427.)

THE ARBITRATION AGREEMENTS
Employee signed an applicant's statement on June 25, 1998, before he started work as a salesman for Employer. This states in part: "I agree that any claim, dispute, and/or controversy ... which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company ... arising from, related to, or having any relationship or connection whatsoever with my ... employment by ... the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act...."
The arbitration agreement in the employee's handbook signed by Employee on June 28, 1998, his first day of work, states: "I also understand that the Corporation promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as *626 reduced expense and increased efficiency) which private binding arbitration can provide both the Corporation and myself, I voluntarily agree that any claim, dispute, or controversy ... which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Corporation ... arising from, related to, or having any relationship or connection whatsoever with my ... employment by ... the Corporation, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers Compensation Act, and Employment Development Department claims), shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act.... [¶] I UNDERSTAND BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE CORPORATION GIVE UP OUR RIGHTS TO TRIAL BY JURY."

THE CALIFORNIA STATUTE
California Labor Code section 229 states: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement." Labor Code section 98 authorizes the Labor Commissioner to hold an administrative hearing on an employee's claim for unpaid wages.[2] By its terms, section 229 authorizes an action for unpaid wages regardless of an applicable arbitration agreement.

THE FEDERAL ARBITRATION ACT
"The FAA was originally enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts. (Dean Witter Reynolds Inc. v. Byrd [ (1985) ] 470 U.S. 213, 219-220, and n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158.)" (Gilmer v. Interstate/Johnson Lane Corp. (1991) 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26.)
"[T]he primary substantive provision" (Moses H. Cone Hospital v. Mercury Constr. Corp. (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765) of the FAA is 9 United States Code section 2 (section 2), which states: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
The phrase "involving commerce" in section 2 is unique in federal statutes. (Allied-Bruce Terminix Cos. v. Dobson (1995) 513 U.S. 265, 273, 115 S.Ct. 834, 130 L.Ed.2d 753.) It has been construed *627 broadly. "[T]he word `involving,' like `affecting,' signals an intent to exercise Congress' commerce power to the full." (Id. at p. 277, 115 S.Ct. 834; cf. Perry v. Thomas (1987) 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426; see Annot., 130 L.E.2d 1189, 1202-1203.) The FAA "rests on the authority of Congress to enact substantive rules under the Commerce Clause." (Southland Corp. v. Keating (1984) 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1.) "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Southland Corp. v. Keating, supra, 465 U.S. at p. 10, 104 S.Ct. 852.) The FAA was designed to be enforceable in state courts as well as federal courts. (Id. at pp. 12-16, 104 S.Ct. 852.)
The exclusionary provision of the FAA on which the Labor Commissioner relies is found in 9 United States Code section 1 and states in part "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[3]

PREEMPTION
"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." (Volt Info. Sciences v. Leland. Stanford Jr. U. (1989) 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488.) Yet it has been construed as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." (Moses H. Cone Hospital v. Mercury Constr. Corp., supra, 460 U.S. at p. 24, 103 S.Ct. 927.)
Were it not for the dispute regarding the construction and effect of the exclusionary provision contained in section 1 of the FAA, there would be no question that the FAA preempts Labor Code section 229. This issue was squarely decided by the United States Supreme Court in Perry v. Thomas, supra, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426. That case involved a claim for unpaid commission wages by a stockbroker. Considering the federal policy favoring arbitration, the court concluded: "This clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way." (Id. at p. 491, 107 S.Ct. 2520.) In Perry, however, "[t]he demands for arbitration were based on a provision found in a Uniform Application for Securities Industry Registration form, which Thomas completed and executed in connection with his application for employment." (482 U.S. 483, 485, 107 S.Ct. 2520, 96 L.Ed.2d 426.) Perhaps because Perry did not involve an employment contract, the court in that case was not asked to consider the scope of the exclusionary provision in section 1 of the FAA.
*628 California cases are uniformly in accord with Perry, holding that where there is an arbitration agreement subject to the FAA, the federal act preempts Labor Code section 229. (See Baker v. Aubry (1989) 216 Cal.App.3d 1259, 1267, 265 Cal.Rptr. 381 ["Construction of the valid arbitration agreement presented here is governed by section 2 of the [FAA] which favors strongly the enforcement of such agreements. The [FAA] preempts our state law in this area."]; Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1543-1544, 60 Cal.Rptr.2d 138 [reaffirming FAA preemption of Labor Code § 229]; see also Chase v. Blue Cross (1996) 42 Cal.App.4th 1142, 1160-1161, 50 Cal.Rptr.2d 178.) As in Perry, however, none of these cases specifically addressed the exclusionary clause contained in section 1.
In Gilmer v. Interstate/Johnson Lane Corp., supra, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, a majority of the United States Supreme Court again did not reach this issue. The court noted that several amici curiae had argued that section 1 excludes from the coverage of the FAA all contracts of employment. However, this issue had not been raised in the proceedings in the courts below and was not among the questions presented in the petition for certiorari. "In any event," the court continued, "it would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment.... Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with [the employer].... [W]e therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement. Consequently, we leave for another day the issue raised by amici curiae." (500 U.S. 20, 25, fn. 2, 111 S.Ct. 1647, 114 L.Ed.2d 26, citations omitted.)[4]
In sum, it is clear that the FAA preempts Labor Code section 229, unless the arbitration agreement is excluded from the FAA under section 1.

SCOPE OF THE EXCLUSION IN SECTION 1
While the United States Supreme Court has not decided the question of the scope of the exclusionary clause in section 1 of the FAA, many federal appellate courts have considered this question. The great majority of these courts have given section 1 a narrow construction, finding that it excludes only employment agreements of employees who, like seamen and railroad workers, are "actually engaged in the movement of interstate or foreign commerce." (Cole v. Burns Intern. Security Services, supra, 105 F.3d 1465, 1471, quoting Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d 592, 598; see also O'Neil v. Hilton Head Hospital, supra, 115 F.3d 272, 274 [section 1 "enumerated] an exempt class of employees, which is limited to workers engaged in the shipment and transportation of goods."]; McWilliams v. Logicon, Inc., supra, 143 F.3d 573, 575-76 ["We agree with the majority of our sister circuits that a narrow construction of 9 U.S.C. § 1 to include only employees actually engaged in the channels of foreign or interstate commerce comports with both the text and history of the Federal Arbitration Act."]; Great Western Mortg. Corp. v. Peacock (3d Cir.1997) 110 F.3d 222, 226-227 [section 1 exclusion encompasses only the employment agreements of workers "acting directly in the channels of commerce itself."].)
One reason for a narrow construction of section 1 is the rule of ejusdem generis, which limits general terms following specific terms to similar matters. Applying this rule to the phrase "`nothing herein contained shall apply to contracts of employment *629 of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce'" suggests that the only excluded employment contracts are for workers similar to seamen and railroad employees. (Tenney Engineering v. United Electrical R. & M. Wkrs., supra, 207 F.2d 450, 452-453; Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d 592, 598, 600-601; Rojas v. TK Communications, Inc., supra, 87 F.3d 745, 748; Cole v. Burns Intern. Security Services, supra, 105 F.3d 1465, 1471; Patterson v. Tenet Healthcare, Inc., supra, 113 F.3d 832, 836.) Giving a broader meaning to "any other class of workers" would make redundant the mention of seamen and railroad employees. (Cole v. Burns Intern. Security Services, supra, 105 F.3d at pp. 1470-1471; Pryner v. Tractor Supply Co., supra, 109 F.3d 354, 358; Patterson, supra, 113 F.3d 832, 836.) Courts have accordingly concluded that this phrase is limited to transportation workers or those involved in the movement of goods in interstate commerce. (Tenney Engineering v. United Electrical R. & M. Wkrs., supra, 207 F.2d 450, 452-453; Signal-Stat Corporation v. Local 475, Etc., supra, 235 F.2d 298, 302-303; Pietro Scalzitti Co. v. International U. of Op. Eng., Local No. 150, supra, 351 F.2d 576, 579-580; Dickstein v. duPont, supra, 443 F.2d 783, 785; Erving v. Virginia Squires Basketball Club (2d Cir.1972) 468 F.2d 1064, 1069; Asplundh Tree Expert Co., supra, 71 F.3d 592, 600-601; Patterson v. Tenet Healthcare, Inc., supra, 113 F.3d 832, 835; Cole v. Burns Intern. Security Services, supra, 105 F.3d 1465, 1471; O'Neil v. Hilton Head Hospital, supra, 115 F.3d 272, 274; Paladino v. Avnet Computer Technologies, Inc., supra, 134 F.3d 1054, 1061; McWilliams v. Logicon, Inc., supra, 143 F.3d 573, 575-576.)
Another argument in support of interpreting section 1 narrowly is based on a comparison of the language of section 1 and section 2, the principal coverage provision of the FAA. Section 2 provides that the Act applies to "a contract evidencing a transaction involving commerce," whereas the exclusion in section 1 applies to, "workers engaged in foreign or interstate commerce." "[E]ngaged in ... commerce" is regarded as a narrower description than "involving commerce." (Tenney Engineering v. United Electrical R. & M. Wkrs., supra, 207 F.2d at p. 453; Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d 592, 601; Cole v. Burns Intern. Security Services, supra, 105 F.3d 1465, 1471-1472; Patterson v. Tenet Healthcare, Inc., supra, 113 F.3d 832, 836.)
Some federal courts interpreting section 1 narrowly also rely on the legislative history of the FAA. The exclusion arose during the drafting of the bill when a seamen's representative objected that their wages should remain subject to admiralty jurisdiction. It has been said that in creating the exclusion, "[t]he draftsmen had in mind the two groups of transportation workers as to which special arbitration legislation already existed and they rounded out the exclusionary clause by excluding all other similar classes of workers." (Tenney Engineering v. United Electrical R. & M. Wkrs., supra, 207 F.2d at pp. 452-453; Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d 592, 598; Pryner v. Tractor Supply Co., supra, 109 F.3d 354, 358.) On the other hand, some cases which give the exclusionary clause a narrow construction find the legislative history ambiguous and irrelevant in view of the clear meaning of the statutory text. (Cole v. Burns Intern., Security Services, supra, 105 F.3d 1465, 1472; Patterson v. Tenet Healthcare, Inc., supra, 113 F.3d 832, 836.)
Finally, courts interpreting the exclusion in section 1 narrowly reason that such an interpretation serves the legislative intent to promote arbitration. (Signal-Stat Corporation v. Local 75, Etc., supra, 235 F.2d 298, 302-303; Pietro Scalzitti Co. v. International U. of Op. Eng., Local No. 150, supra, 351 F.2d 576, 579-580 Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d 592, 599, 601-602; Rojas v. TK Communications, Inc., supra, 87 F.3d 745, 748; *630 O'Neil v. Hilton Head Hospital, supra, 115 F.3d 272, 274; McWilliams v. Logicon, Inc., supra, 143 F.3d 573, 576.)
In California, the two courts that have considered the exclusionary provision of section 1 have followed federal authorities. In Tonetti v. Shirley (1985) 173 Cal.App.3d 1144, 219 Cal.Rptr. 616 the court indicated it agreed with those federal cases finding the exclusionary clause applicable only to "workers employed in the transportation industries." (Id. at p. 1148, 219 Cal.Rptr. 616.) We note, however, that Tonetti was a case involving an arbitration agreement in a securities exchange application. (Id. at pp. 1146, 1148-1149, 219 Cal.Rptr. 616.) As Gilmer v. Interstate/Johnson Lane Corp., supra, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, found, securities registration applications are not considered to be employment contracts.
In Spellman v. Securities, Annuities & Ins. Services, Inc. (Spellman), supra, 8 Cal.App.4th 452, 10 Cal.Rptr.2d 427, the Second District Court of Appeal (Div.6) confronted the question left open in Gilmer. At issue in Spellman was the application of the FAA to an arbitration agreement contained in a securities exchange application, which was specifically incorporated into the parties' employment contract. (Id. at p. 458, 10 Cal.Rptr.2d 427.) The employee in Spellman argued that securities representatives "engage in interstate commerce within the meaning of the FAA" and thus the employment contract in his case fell within the section 1 exclusion. The court disagreed, distinguishing the cases relied on by the employee, which involved postal workers. (American Postal Workers Union v. US Postal Serv. (11th Cir.1987) 823 F.2d 466; Bacashihua v. U.S. Postal Service (6th Cir.1988) 859 F.2d 402, 404-405.) Postal workers, the court observed, belong to a class of workers "`actually engaged in interstate commerce.'" (Spellman, supra, at p. 459, 10 Cal.Rptr.2d 427.)
The court in Spellman found pertinent the case of Matter of Management Recruiters Intern, and. Nebel (N.D.Ohio 1991) 765 F.Supp. 419, a case in which the court squarely addressed the question "whether an arbitration provision in Nebel's employment contract was subject to the exclusion contained in section 1 of the FAA." (Spellman, supra, at p. 460, 10 Cal.Rptr.2d 427.) The Spellman court noted that the majority of the Circuit Courts of Appeals "have 'limited the exception in § 1 to employees involved in the actual movement of goods in interstate commerce....' The Nebel court held, therefore, that the FAA applies to non-union employment contracts in the securities industry. The narrow construction accorded section 1 of the FAA by the federal courts supports the strong national policy favoring arbitration as a means of settling private disputes. (Matter of Management Recruiters Intern, and Nebel, supra, 765 F.Supp. at pp. 441-22.)" (Id. at p. 460.)
In the wake of federal and state authority construing section 1 narrowly, the Ninth Circuit Court of Appeals published Craft in 1999, taking a position contrary to the above precedent. Over a dissent, the majority in Craft criticized the holdings of the other Circuit Courts of Appeals and concluded that the exclusionary clause in section 1 of the FAA should be broadly applied, holding that "the FAA does not apply to labor or employment contracts." (177 F.3d 1083, 1094.) Craft relied on the reasoning of scholars and the legislative history of the FAA. We briefly summarize its departure from precedent.
Craft relies heavily on legislative history and the contemporary understanding of Congress' Commerce Clause power in 1925. "Congress' Commerce Clause power at the time of the FAA's enactment was limited to employees who actually transported people or goods in interstate commerce." (177 F.3d 1083, 1087.) "[T]he legislative history demonstrates that the Act's purpose was solely to bind merchants who were involved in commercial dealings." (Id. at p. 1089.) In an early draft of the bill, it made enforceable written *631 provisions in "any contract" involving commerce and contained no exclusionary clause. (Ibid.) At a hearing on the bill, concern was expressed over whether the Act would apply to employment contracts. The chairman of the committee that drafted the bill answered this concern by stating that "It is not intended that this shall be an act referring to labor disputes at all. It is purely an act to give the merchants the right or the privilege of sitting down and agreeing with each other as to what their damages are, if they want to do it." (Craft, supra, at p. 1090, italics in original.) The Chairman, as well as Secretary of Commerce Herbert Hoover, both suggested that "if Congress wanted to ensure that 'workers' contracts' were excluded from the bill" it could be so amended (Ibid.) "Thereafter, Congress amended what became § 2 of the FAA so that it applied only to `contracts evidencing a transaction' (not to all contracts) and added the employment exclusion." (Ibid.) On the basis of this legislative history, the court in Craft concluded: "Reading § 2 and § 1 together, as we must, demonstrates that Congress did not intend for the FAA to apply to any employment contracts." (Id. at p. 1092.)
The Craft court discounted the differences in language between section 2 and section 1, finding the phrases "involving commerce" and "engaged in commerce" to be coextensive in scope. Both phrases had a limited meaning in 1925. And as the coverage provision was expanded with the broadening of the powers of the commerce clause, the Craft court reasoned that the scope of the exclusion should likewise be extended. The Craft court similarly rejected the application of the principle of ejusdem generis in circumstances that in its view would frustrate legislative intent.
In light of the conflict in the federal appellate cases created by the opinion in Craft, we observe that "`[0]n a federal question, the decisions of the United States Supreme Court are binding on state courts. However, the decisions of the lower federal courts, while persuasive, are not binding on us. (People v. Bradley (1969) 1 Cal.3d 80, 86, 81 Cal.Rptr. 457, 460 P.2d 129.) Thus, in the absence of a controlling United States Supreme Court opinion, we make an independent determination of federal law. Where the federal circuits are in conflict, the decisions of the Ninth Circuit are entitled to no greater weight than those of other circuits.' (Irwin v. City of Hemet (1994) 22 Cal.App.4th 507, 520, fn. 8, 27 Cal.Rptr.2d 433.)" (Forsyth v. Jones (1997) 57 Cal.App.4th 776, 782-783, 67 Cal.Rptr.2d 357.) As to our own state Courts of Appeal, we are likewise not bound by an opinion of another District Court of Appeal. "We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree. [Citation.]" (Greyhound Lines, Inc. v. County of Santa Clara (1986) 187 Cal.App.3d 480, 485, 231 Cal.Rptr. 702.)
We will align ourselves with the great weight of federal authority and with Spellman, supra, 8 Cal.App.4th 452, 10 Cal.Rptr.2d 427. We consider first the language of the statute. "Where ... legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; `no resort to extrinsic aids is necessary or proper.' [Citations.]" (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1119-1120, 81 Cal.Rptr.2d 471, 969 P.2d 564.) We note that Craft would exclude all employment contracts from the FAA not only under the exclusionary provision of section 1 of the FAA, but also by virtue of the phrasing of section 2, the coverage provision. This reading of section 2 is at odds with United States Supreme Court authority giving section 2 a broad construction.
Furthermore, we attach significance to the different phrasing employed by Congress in these two sections. The coverage provision applies to contracts "evidencing a transaction involving commerce." The exclusionary *632 provision is aimed at the employment contracts of specified workers "engaged in ... commerce." The language of the exclusionary provision is clearly more limited. Adding force to this conclusion is the principle of ejusdem generis and the fact that Congress specified the types of employment contracts excluded. "If Congress had wished to exempt all employees from the coverage of the FAA it could have said so. Instead, it enumerated an exempt class of employees, which is limited to workers engaged in the shipment and transportation of goods." (O'Neil v. Hilton Head Hospital, supra, 115 F.3d 272, 274.)
Another canon of statutory construction operating here is that courts should avoid interpreting a statute in a manner which renders some words altogether redundant. (Cole v. Burns Intern. Security Services, supra., 105 F.3d at p. 1470, citing Gustafson v. Alloyd Co. (1995) 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1.) To read the final phrase of section 1 as extending to all workers over whom Congress has power under the Commerce Clause would render meaningless the specific reference to seamen and railroad workers. (See Pryner v. Tractor Supply Co., supra, 109 F.3d 354, 358 [to ignore the linguistic differences between Section 1 and Section 2 would "both make the reference to seamen and railroad workers superfluous and give the exclusion a breathtaking scope."].) "[I]t is quite impossible to apply a broad meaning to the term `commerce' in Section 1 and not rob the rest of the exclusion clause of all significance." (Cole v. Burns Intern.. Security Services, supra, 105 F.3d at p. 1470, quoting Albert v. National Cash Register Co. (S.D.Fla. 1994) 874 F.Supp. 1324, 1327.)
We regard the language of the statutory exclusion as sufficiently clear to require no resort to the legislative history. (See Cole v. Burns Intern. Security Services, supra, 105 F.3d at p. 1472 ["where the statutory text does not admit of serious ambiguity, and where firmly established case law is absolutely clear on the meaning of the statute, legislative history is, at best secondary, and, at worst, irrelevant."].) Furthermore, there is legislative history pertaining to the FAA which can be interpreted to support both sides here. The Craft court based its conclusion largely on the Act's legislative history. However, another federal circuit court in Tenney Engineering, Inc. v. United Electrical R. & M. Wkrs., supra, 207 F.2d 450 relied on the legislative history to reach a contrary result, that the language "any other class of workers engaged in foreign or interstate commerce" was intended to include only other transportation workers. (Id. at pp. 452-53.) This conclusion has also been reached by a number of other courts, including Pryner v. Tractor Supply Co., supra, 109 F.3d 354, 358, where the court found that "this [legislative] history supports rather than undermines limiting 'engaged in foreign or interstate commerce' to transportation." (See also Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d at p. 598; Dickstein v. duPont, supra, 443 F.2d 783.)
Finally, our conclusion in this case is consistent with the modern judicial trend favoring arbitration in both state and federal courts. The FAA originated as a tool "designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." (Lagatree v. Luce, Forward, Hamilton & Scripps (1999) 74 Cal.App.4th 1105, 1117, 88 Cal.Rptr.2d 664, quoting Volt Info. Sciences v. Leland Stanford Jr. U., supra, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L, Ed.2d 488, internal quotation marks omitted.) It "established] a federal policy favoring arbitration, ... requiring that [courts] rigorously enforce agreements to arbitrate." (Ibid., quoting Shearson/American Express, Inc. v. McMahon (1987) 482 U.S. 220, 225-26, 107 S.Ct. 2332, 96 L.Ed.2d 185, internal quotations omitted.) The Supreme Court has further declared that the scope of the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements *633 within the full reach of the Commerce Clause." (Perry v. Thomas, supra, 482 U.S. at p. 490, 107 S.Ct. 2520; accord Allied-Bruce Terminix Co. v. Dobson, supra, 513 U.S. 265, 273-275, 115 S.Ct. 834, 130 L.Ed.2d 753; see also Spellman, supra, 8 Cal.App.4th at pp. 458-59, 10 Cal. Rptr.2d 427.)

CONCLUSION
Here the parties' employment agreements provide that they will submit all disputes arising from their contractual relationship to arbitration under the FAA. The relationship between Employer and Employee is one "involving commerce" within the meaning of section 2 of the FAA. (Allied-Bruce Terminix Companies, Inc. v. Dobson, supra, 513 U.S. at p. 277, 115 S.Ct. 834.) Although Employer, a car dealership, transported goods both interstate and intrastate, Employee was employed as a car salesman and there is no assertion that he was "actually engaged in the movement of goods in interstate commerce." (Asplundh Tree Expert Co. v. Bates, supra, 71 F.3d at p. 601.) Consequently, the employment contract in this case does not fall within the exclusionary provision of section 1 of the FAA. The FAA therefore applies and preempts state law, namely Labor Code section 229. (Perry v. Thomas, supra, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426; Baker v. Aubry, supra, 216 Cal.App.3d 1259, 265 Cal. Rptr. 381.)

DISPOSITION
The order denying the petition to compel arbitration is reversed and the court is directed to enter an order granting the petition. Each side to bear its own costs on appeal.
WUNDERLICH, J., and MIHARA, J., concur.
NOTES
[1] The following decisions have given the exclusionary provision a narrow construction. (Tenney Engineering v. United Electrical R. & M. Wkrs. (3d Cir.1953) 207 F.2d 450, 452-453; Signal-Stat Corporation v. Local 475, Etc. (2d Cir.1956) 235 F.2d 298, 302-303; Pietro Scalzitti Co. v. International U. of Op. Eng., Local No. 150 (7th Cir.1965) 351 F.2d 576, 579-580; Dickstein v. duPont (1st Cir. 1971) 443 F.2d 783, 785; Erving v. Virginia Squires Basketball Club (2d Cir. 1972) 468 F.2d 1064, 1069; Asplundh Tree Expert Co. v. Bates (6th Cir. 1995) 71 F.3d 592, 598, 600-601; Rojas v. TK Communications, Inc. (5th Cir. 1996) 87 F.3d 745, 748; Cole v. Burns Intern. Security Services (D.C.Cir.1997) 105 F.3d 1465, 1471; Pryner v. Tractor Supply Co. (7th Cir.1997) 109 F.3d 354, 358; Patterson v. Tenet Healthcare, Inc. (8th Cir.1997) 113 F.3d 832, 836; O'Neil v. Hilton Head Hospital (4th Cir.1997) 115 F.3d 272, 274; Paladino v. Avnet Computer Technologies, Inc. (11th Cir. 1998) 134 F.3d 1054, 1061; McWilliams v. Logicon, Inc. (10th Cir.1998) 143 F.3d 573, 575-576.)
[2] Section 98 provides in part: "(a) The Labor Commissioner shall have the authority to investigate employee complaints. The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner including orders of the Industrial Welfare Commission, and shall determine all matters arising under his or her jurisdiction."
[3] Title 9 of the United States Code section 1 states in full: "`Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; `commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."
[4] Justices Stevens and Marshall dissented in Gilmer, expressing the opinion that the securities registration application, which was made a condition of employment, was part of a "contract of employment" and that, based on the legislative history, it was excluded from the reach of the FAA under section 1. (Id. at p. 40, 111 S.Ct. 1647.)